With the attorneys who are going to make a presentation, please step up to the podium and state your name and the party that you represent. Kathleen Hobson on behalf of Appalese, Jenny, Inc. and Lucan, Inc. Richard Berglund on behalf of the appellant, Optima, Inc. We have allotted 30 minutes for this case. The time will be divided equally between the parties, and the appellant may reserve a few minutes for rebuttal. If that you may proceed. Thank you. Please be seated. May it please the Court, Counsel. Good morning, Your Honors. My name is Richard Berglund. Here with me today at counsel's table is Mr. Robert Mark Chemers. We represent the third-party plaintiff and appellant in this case, Optima, Inc. This case comes to you today on appeal from the dismissal of a third-party complaint against Jenny, Inc. and Lucan, Inc. The statute that is at issue is 12.80 of the Illinois Business Corporation Act, which I will refer to as the Survival Statute. Survival Statute provides that a corporation's dissolution shall not take away from or impair any civil remedy available to or against a corporation for any right or claim existing or liability incurred prior to dissolution if such action is commenced within five years after dissolution. In your reply brief, you argue that this cause of action accrued prior to the dissolution. Yes, we did. Okay. Assuming we agree with that position, even if it accrued, how do we get past the five-year limit? You get past the five-year in two ways. First is that you look at the statute and you interpret it so as to avoid an unjust result. The Supreme Court in Palais and the appellate court in Hamilton. Well, isn't a statute of limitations seen unjust in any case, P.I.? It's unjust. This is injury and this is unjust because we are two years and one month or one day filing the cause of action rather than just two years. Doesn't that seem unjust? I think that leads to the next reason, and that is we argue that the court here can apply the discovery rule. The discovery rule has been applied across a broad spectrum of litigation to alleviate the harsh results of a strict application of a limitations period. This is really not a limitations period. It's a survival statute. And although you cite cases, none of the cases that you cited have a factually similar setting to the one we have here. We have one where you have minors involved and you're balancing the minor's interest against the corporate existence, but none of them really are like this. And if we had equitable power, which is one of the first questions, to extend it to something like this, why should this be a circumstance where the courts extend it rather than a circumstance that really it's up to the legislature to deal with? I mean, they could put in a statutory exception where you have a party who became aware of the cause of action through no fault of their own after the expiration. But we have all these lines of cases that basically say it's to be interpreted strictly. And it was extended from two years to five years at one point. And the whole nature of this limitation based upon corporate dissolution acknowledges that there will be circumstances that people lose the right to sue. I think you're right, and I thought about that as well in preparing for this argument and also preparing the briefs. I guess my answer to your question would be that you look at the discovery rule, and the discovery rule is a creature of the court. It was initially applied with respect to statutes of limitation, respect to professional liability, medical malpractice, and even construction negligence. And it was first created by the courts, and then it was subsequently codified, and it turned into a statute. So it's our position that the court does have the power to apply the discovery rule here to create the exception. And then if the legislature buys it or some other courts buy it as well, it becomes recognized by the courts. And it subsequently will become, hopefully, codified in the statute. Weren't these same cases of same issue raised in Pilate and Mansfield? The same issues were raised in Pilate and Mansfield. And one's a Supreme Court case, so we would be going against the Supreme Court. Well, I don't think you'd be going against the Supreme Court in Pilate if you recognized that these causes of action accrued prior to dissolution, because this case is distinguishable from Pilate in that in Pilate the breach of contract occurred four years after dissolution. But they said they don't accept Hamilton. Oh, they recognized Hamilton. They recognized it but didn't accept it. I don't believe that they didn't accept it. I read the case a different way. I don't think that they outright rejected it. I believe that they recognized the reasoning in it and distinguished Hamilton from the particular facts of the case in Pilate. Well, against a corporation versus another way, and they said against it don't float. Well, against it doesn't float if the accrual of the cause of action accrued prior to dissolution as it did in Pilate. They didn't even get to the next step, the step that we're talking about here, and that is the extension of the survival period. They stopped there because they didn't need to go any further. They said that the survival statute hadn't even been invoked yet. But aren't you also opening the door for corporations to play more games? You are and you aren't, because in this case we have a construction negligence action that arises out of latent construction defects. And if you were to apply the statute as, you know, you're implying or as the appellees are saying, you could have a subcontractor perform some work, and after it performs its work, it dissolves immediately. And since we're talking about potential equitable reasons to build in exceptions, questions that occur to me are, my experience, if you're building something and you have contractors or subcontractors, you're usually contractually obligating them to list you as an additional insured under their policy. Absolutely. And, you know, so I'm not sure where the equities are as compelling as in a situation where there is a, for example, a minor who would totally lose the right during their minority to ever bring a cause of action. And even if they weren't an additional insured, under these circumstances, you would assume that it's just really a risk-shifting circumstance between the corporate entities who are undergoing the construction of a large project saying, okay, well, if the law says that if this company that we've hired as a subcontractor, whether we did or we didn't have them list us as an additional insured, goes out of business, then potentially we have a 10-year period of time where they could still sue us and the corporation could be gone for five of those 10 years. So we would protect ourselves against that eventuality through insurance. You know, this isn't a situation where you have helpless entities that can't insure these risks with the knowledge of what the law is on corporate existence. I don't believe we're saying that in this case. And actually, if you look at the breach of contract actions against Jenny and Lucon, one of them is that they failed to procure insurance that was required by the contract. Well, but somebody let them do the work without seeing the insurance then. Well, I mean, that's an issue that we would love to be able to litigate, but now we can't. And what this really does is it does two things. If you were to apply it strictly here with respect to actions arising in a construction setting, one is that it really rewards Jenny and Lucon for going out of business and it punishes Optima for staying in business. And two, I think more importantly, it really frustrates an equitable allocation of liability among the alleged tort users. Because now Jenny and Lucon... of the corporate survival statute. It sets a period of time where it says, okay, for the first five years after you dissolve, you can still be reached. But after that, for everybody in the state to know, you could potentially be hanging fire if one of the entities that you would like to sue for whatever reason, whether it's contribution indemnification or for an act of negligence against you, you better protect yourself against that. Another way to look at it, though, is to allow that corporation or the entity who's suing the corporation, if it did not know about its cause of action prior to the survival period running, to allow them then to say, or at least try to establish, we did not know about this cause of action. In this case, it was impossible for Optima to have known that it had a cause of action. And then you apply an exception through the discovery rule and say, in those limited circumstances, then a corporation either can sue or it can be sued, even though it's already been dissolved for more than five years. And if I were a legislator, I would probably vote for that. The question is whether we have the power and should exercise the power if we have it, because of equity, to try to craft an exception that doesn't exist and it has been ruled not to exist in a number of similar circumstances. I agree with you. But I believe that you do have the power, the court does have the power, through the discovery rule, as we cited, to get the wheels going. Well, let's go a little step further. You're saying we do. Well, how do we do it without going against PILOT and Mansfield? Specifically, did they leave doors open that we can look at? Because your cases don't tell us that. I believe, as I stated before, the case is distinguishable from PILOT because these causes of action accrued prior to dissolution. In PILOT, the breach of contract occurred more than four years after the corporation dissolved. So I think this case, this particular circumstance, is completely distinguishable from PILOT, even though some of the principles that the Supreme Court laid out in PILOT obviously are controlling. In this case, you can create a limited exception where the cause of action accrued prior to dissolution but in no way could have been discovered until the corporate survival period ran. What about the other law? Basically, there either has to be a judgment or a settlement under Illinois law prior to. Well, I think that goes back to my prior point you're talking about with respect to indemnification and contribution, and that is that a subcontractor performing work for a general after it gets its work done could immediately dissolve. And if you're going to read the statute like the athletes would like you to, then all of a sudden any cause of action for contribution and indemnification after dissolution, which occurs right after the work is performed, is done. It can't be filed. Well, for five years. No, according to PILOT, it can't be filed because the cause of action accrued after dissolution because it's one for contribution and indemnification. It's just not fair. It's not the right way to read the statute. And if the Court doesn't have any further questions, I'd like to reserve five minutes if I could for a rebuttal. Thank you. Good morning. Ms. Hobson, you may proceed. May it please the Court and Council. Again, Kathleen Hobson on behalf of the athletes, Jenny Inc. and Lucan Inc. I know I'm stating the obvious, but Jenny Inc. and Lucan Inc. do not exist. Illinois law has determined that five years after dissolution, these entities cannot sue and cannot be sued. So what we're here today is on the optimist position that this Court should craft an exception to the corporate survival statute and determine that there is an exception, apply principles of equity to this survival statute, as Justice has already pointed out, which is not a statute of limitations where principles of equity are typically applied. Wouldn't you agree that the equities are in their favor? I don't know that I do. Well, they would have the right to bring an indemnification and contribution action against your client had your client not dissolved, and they didn't sit on that right in the sense that they didn't find out about the existence of this act that they're being sued about that was arguably, according to them, the fault of your now-dissolved corporation until after this corporate existence statute lapsed. So they, if their cause of action, although we know at this point we take the pleadings as true, if their cause of action would have been the way they say it is, they could be completely without fault and on the hook for the sole reason, not because they slept on their rights, but because your corporations chose to dissolve. Doesn't that put them in a position, at least equitably, of being in a strong position? I believe equitably. You could perceive that as being in a strong position, but then we have other situations under joint sever liability where, you know, if one tortfeasor doesn't have the sufficient funds, the other tortfeasor who is less liable is paying more than their fair share. So, yes, I see your point as far as the equities that Optima would not have known until after. You know, another point following Judge Epstein's is I kind of say our way we're saying it accrues. Really, when you look at the facts of this case, it really did accrue before, but we're stuck with the Illinois definition of what accrual is, which helps you, and it doesn't seem right. I mean, we all know that this happened before the five-year period ended, but they weren't aware of it until after. So it's almost as though our definition of accrual is wrong. My response to that would be is it fair to someone who has experienced a construction defect to not be able to bring suit if it's 11 years later? I mean, the rules exist as far as time limits and limits on actions. And, I mean, I know accrual is not exactly a limit on an action, but what you want to look at when Optima is raising the right to contribution and dignification versus the accrual, I think that Pilot addresses that, because Pilot says that you're not looking at when the right arises, when it's a liability action. You're looking at the accrual. I mean, I think that they've answered that question. But I keep thinking it should relate back. Well, I mean, then you're going into a whole new area of law, carving out something that has not existed. Right, right. I'm just thinking that. In this case, the bad part is the fact that somebody didn't do their job on insurance, but whatever. Another point that I wanted to bring out as far as the accrual is that Optima has raised that this is a breach of contract action, and I would like this Court to keep in mind that this is a third-party complaint for contribution and indemnification. This is not a breach of contract action. So that's not what we're looking at here, and I would ask the Court to keep that in mind when you're applying that analysis. So to kind of get a broad overview of what you're looking at here, you're looking at, first, whether or not the survival statute can be invoked by Optima as to whether when this accrues. And then, secondly, if you determine that it did accrue and that this can be invoked, you're looking at whether you want to carve out this broad exception. Well, how broad would it have to be? You could say that where there is a indemnification or contribution action brought by a party that had no knowledge of the existence of an action against them during the period of time, that they would have the exception to then go for contribution or indemnification against the company that chose to dissolve. If they had knowledge of it and slept on it, then there would be no exception. And you could even put in an exception that it would be capped by the amount of insurance that the dissolved corporation had for that period. I mean, it doesn't have to be broad. You keep saying it's broad, but this is really a specific fact situation, and the question is whether the equities which you eventually agreed favor the innocent, in this case assuming the pleadings, optima, should be left without any type of a remedy for this harsh outcome. Well, when you're looking at the fairness, what about the fairness to these defunct corporations that under Illinois law expect that all claims against them after five years have been dissolved? Well, you know, we don't know, and I don't really care for the purposes of this discussion. I mean, theoretically, Mr. Holtzman could do single-entity corporations, stay in the business of doing this type of work and have it as part of his business model. As soon as the work is done, we're going to dissolve our corporation to limit our liability during that period of time. And other than having that known by the people who would otherwise seek to contract with him and would no longer contract with him because they know that that's what the tactic is, that would be something that would be at least some views of things, not exactly crying for reward under the concepts of equity. Right. And you don't have those facts there because you do have those pleadings. Yeah, I mean, yeah, but they haven't proved anything yet at this point, and that really isn't relevant. But I'm saying it doesn't have to be a broad exception, and it doesn't always have to be exercised where there would be, you know, a good-faith dissolution. In this outcome that you're suggesting, a boon for the insurance company, had the parties complied with their obligations, procured insurance, the insurance company, which is covering liability for this Lucan and Jenny, it's a boon for them. I mean, they had obligation, they assessed a fee for providing insurance, and now they don't have to do it because the company went out of business. And presumably at the time they issued the insurance, they wouldn't know that it was part of the plan to dissolve the corporation. So they were actually getting a premium to cover it during the full extent of potential liability of their client. And then when the client decides to dissolve, truncating the period of time where the liability can be brought, it's a windfall for that insurance company. With all due respect, I think what the panel is, I'm sorry. I said you hadn't thought of this. Well, what I'm hearing are issues that I consider issues for the legislature related to this act. If there is a problem in Illinois with businesses doing that and escaping liability, then the legislature should do something about that. But we are looking at this, only this specific situation. There is nothing about, you know, whether or not insurance has been procured or what that situation is in this case. Whether or not insurance was procured, still this corporation is dissolved and they've been sued after five years later. No, I think we all understand that. The question is whether, A, we have the power to, and, B, if we do have the power to, we should exercise the power because of the equities in favor of the appellant. We all understand that. I had wanted to just quickly point out, I know I'm almost out of time, but I had pointed out, and the panel is very well aware of how the cases that Optimus cited don't necessarily support their position for an exception. But I had wanted to also point out in the Moore case, the one with the minor, that in that case they were specifically looking at the statute for the rights of minors. No, you're weighing one statute against another. I understand that. Yeah, and they weren't looking at the equities. So I still don't think that you have the legal basis or any sort of analysis in order in this situation to apply equities when it's never been done before and it would be going against the Supreme Court. They haven't given us a case. Or even a persuasive case from another jurisdiction. So my position is that they have not established that either there should be an exception or that the cause of action accrued prior to dissolution. So I would respectfully request that this Court, based on our briefs and on the argument, affirm the circuit court. Thank you. Thanks. Mr. Brinkley. Your Honors, I'll be brief. The beauty of sitting in the position that you're in, I believe, is you can craft, as Justice Steng said, a very narrow exception in these particular circumstances. And we believe that, as you had recognized, that the equities do warrant such an extension and such a. . . No, I didn't say that. I said the equities are in your favor. Okay. I didn't say they warrant the extension. You're hoping that's what my conclusion is. Right. Well, I agree with you nonetheless. So one other matter that I wanted just to bring up, and I'm sure the Justices have thought about this, but that is Section 5.25B3 of the Business Corporation Act. If you were to recognize that there was an exception here, then you should allow Optima to serve Jenny and Lucon through the Secretary of State, because otherwise the exception would then be meaningless. For those reasons, the reasons stated in our briefs, I would just ask the Court, reverse the trial court's dismissal of the complaint against Jenny and Lucon. Thank you. Thank you. Very interesting case. Very well briefed and very well argued. We'll take its case under advisement, and a decision will be issued in due course. Thank you. Thank you both for a very fine argument.